**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**In the Matter of the Search of the**
**Premises Located at 3400 S. Nevada Street,**     Case No. 21-MJ-1009
**Milwaukee, WI 53207**

---

**ORDER**

On December 6, 2021, the magistrate judge issued a search warrant for the premises listed in the caption above, a foundry operated by Milwaukee Precision Casting, Inc. ("MPC" or "the company"), based on alleged violations of the Clean Water Act. The warrant was executed on December 7, 2021. On December 8, 2021 MPC filed a motion to unseal the warrant affidavit and for return of seized property. The magistrate judge denied the motion to unseal and found the motion for return of property moot. MPC objected, and the matter has been assigned to me for review.

**I.**

In its original motion to unseal, MPC complained about the manner in which the warrant was executed and the non-responsiveness of the prosecutors when questioned about it. (R. 2 at 1-7, 11-12.) MPC further complained that agents seized safety records, exposing the company to OSHA violations. (R. 2 at 8.) MPC argued that there was no need to take safety manuals, and that their return was necessary to the safe and lawful operation of the business. (R. 2 at 11.) The company also worried that unless it was provided information as to what it supposedly did wrong it risked daily environmental fines on resumption of business. (R. 2 at 9.) When questioned, the executing agents said only "don't break the law"; pressed by counsel, the agents added that the company should refer to the statutory provisions cited in

the warrant and raise the pH levels of its discharges in accord with Milwaukee County regulations. (R. 2 at 10.) Finally, the company complained about the presence of ATF and ICE agents during the execution, as there was no indication of federal gun or immigration violations. (R. 2 at 10.)

The government responded that copies of the safety documents MPC requested had been returned (R. 3 at 5), making this part of the motion moot (R. 3 at 6-7); that grievances about the manner in which the search was executed were the proper subject of a motion to suppress in any later criminal prosecution or, perhaps, a civil suit, rather than a motion to unseal (R. 3 at 1, 5, 7); and that MPC had not been charged with any crime and had no due process right to access the sealed searched warrant affidavit (R. 3 at 1, 7-10). On the final point, the government relied on In re EyeCare Physicians of Am., 100 F.3d 514 (7th Cir. 1996), where the court found no Fifth Amendment right to access. "If preindictment disclosure of sealed warrant affidavits was required to satisfy due process (assuming there had been a predicate deprivation of life, liberty or property), the hands of law enforcement would be needlessly tied and investigations of criminal activity would be made unduly difficult if not impossible." Id. at 517. The Seventh Circuit further held that there is no Fourth Amendment right of access to sealed affidavits, id., and that access under Fed. R. Crim. P. 41(g) and the common law was left to the sound discretion of the trial court, id. at 517-18. The government concluded that MPC provided no grounds to unseal the affidavit, and that doing so could compromise its ongoing investigation (R. 3 at 9); if MPC wanted to comply with the law, it could rely on the advice of counsel rather than sifting through pre-indictment investigative documents (R. 3 at 10).

On December 10, 2021, following a hearing, the magistrate judge denied MPC's motion

to unseal and found moot MPC's motion for return of seized property. (R. 4, 6.) The judge later denied MPC's request (R. 8) for a copy of the warrant return (R. 9).

On December 23, 2021, MPC filed objections to the order denying the motion to unseal. (R. 10.) MPC sought unsealing under the common law right to inspect public records, Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978), arguing that it had a compelling interest in learning what it allegedly did wrong, an interest shared by the public. (R. 10 at 2.) The company argued that the government's concerns about its ongoing investigation were best addressed through redactions and a protective order. (R. 10 at 2.) It thus asked that the warrant affidavit be partially unsealed once the government had a chance to make reasonable redactions. (R. 10 at 2.)

In the objections, MPC again complained about the heavy-handed manner of execution, the costs associated with the shutdown, and the intimidation of its employees. (R. 10 at 4-5.) The company noted that water samples taken during the execution could have been gathered through a routine EPA or MMSD inspection. (R. 10 at 5.) Following the hearing before the magistrate judge, MPC again asked what it had done wrong, and the government responded that the company had discharged acidic wastewater into the municipal sewer system. (R. 10 at 7.) MPC complained that it still had no concrete idea what it had allegedly done to violate the Clean Water Act; the government had declined to share the results of the water samples taken during the execution. (R. 10 at 7.) MPC claimed that the government had put worries about the secrecy of its investigation over legitimate concerns for public health and safety. (R. 10 at 8.)

MPC argued that the magistrate judge's refusal to unseal was clearly erroneous. (R. 10 at 8-9, citing Fed. R. Crim. P. 59(a) ("The district judge must consider timely objections and

3

modify or set aside any part of the order that is contrary to law or clearly erroneous.").) When faced with a motion to unseal, the court balances the movant's interest in disclosure against the government's interest in secrecy. (R. 10 at 10-11, collecting cases.) Here, MPC sought to keep its business open and in compliance with the Clean Water Act, arguing that it could not cure problems it did not know about. (R. 10 at 11.) The government's statement about "discharging industrial wastewater, including acid wastewater into the Milwaukee municipal sanitary sewer system" was, the company argued, so vague as to be useless. (R. 10 at 12.) MPC was thus put to the choice of shutting down, losing over $100,000 per day, or remaining open, risking $50,000 daily fines. (R. 10 at 12.)

MPC further argued that the public interest would be served by permitting it to correct any clean water violations. (R. 10 at 13.) Specifically, providing the affidavit would allow it to determine the delta between the pH level of water coming into its facility and the wastewater leaving the facility. (R. 10 at 12-13.) Armed with this information, MPC could adjust its production processes as necessary. (R. 10 at 13.) The government's interest in protecting the secrecy of its investigation did not, MPC concluded, justify complete sealing. (R. 10 at 13-14.)

In its December 30, 2021, response, the government again relied on In re EyeCare Physicians, which found no constitutional right of access to the contents of a sealed search warrant affidavit. (R. 11 at 2.) Rule 41(g) is "administrative in nature" and "provides no time period before which the magistrate must release sealed documents filed with the clerk of the court nor does the rule say anything about access to sealed affidavits." 100 F.3d at 517. The court noted that granting access could interfere with the secrecy of a grand jury investigation. Id. at 518.

Additional consequences in disclosing the sealed affidavits include: the identity

4

> of unnamed subjects not yet charged would be revealed; there may be mistaken notions concerning who might and might not be cooperating with the government or who may be subjects; there may be misunderstandings about the parameters of the government's investigation; the privacy of the innocent and the implicated would be threatened; and the cooperation of present and potential witnesses could be compromised or influenced. We add that disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove or withhold records.

Id. at 519.

The government argued that MPC made no compelling case for unsealing. First, MPC focused on the manner in which the warrant was executed, which had nothing to do with whether the underlying warrant affidavit should be unsealed. (R. 11 at 3-4.) Such arguments were properly presented in a motion to suppress or for a Franks hearing in a later criminal case, or in a civil suit; unsealing the affidavit would not remedy those alleged wrongs. (R. 11 at 4.)

Second, the government characterized as disingenuous MPC's argument that the affidavit had to be unsealed so it could avoid future violations. MPC had represented to the MMSD that it did not discharge any industrial wastewater. Thus, it should not have to make any modifications to come into compliance. (R. 11 at 5.) The government further noted that it had advised MPC that it received information that MPC was discharging acidic wastewater into the sewer system, and the regulations provide clear guidance on acceptable levels. (R. 11 at 5-6.) Being able to review the affidavit would not further assist MPC in complying with the law. "Ultimately, learning about the dates on which the United States contends MPC discharged acidic waste or the level of acidity of that waste may be useful to MPC in formulating a defense to the allegations, but this knowledge will not assist MPC in complying with the CWA any more than the information already provided to it." (R. 11 at 6.)

5

> It is evident, therefore, that MPC is not seeking a copy of the affidavit to ensure that it complies with the law, but rather because it sees a strategic litigation advantage in obtaining the affidavit before indictment. Perhaps that is so that it can work on formulating its defense. Or maybe it is so that it can attempt to determine who might be the government's witnesses at trial. Or maybe it is so that it can obtain information about the types and methods of testing employed by the EPA.

(R. 11 at 7.) On the other hand, unsealing would "harm to the investigation by, among other things, chilling witness cooperation and disrupting further investigation." (R. 11 at 7.)

MPC filed no reply to the government's response. However, on March 2, 2022, MPC filed a notice of supplemental authority, i.e., a Department of Justice directive that ATF agents use body cameras during search warrant executions. (R. 12 at 1.) The ATF agents participating in the search here apparently failed to follow this policy. (R. 12 at 1-2.) MPC argued that this additional evidence of misconduct should be considered in reviewing the objections. (R. 12 at 2.)

On May 20, 2022, MPC filed a letter checking on the status of the objections. (R. 13 at 1.) On June 3, 2022, the government filed a motion to unseal the record of the December 10, 2021, hearing for use in the appeal of decision quashing a grand jury subpoena. The magistrate judge granted that motion (R. 14), as well as a request by MPC's counsel for a copy of the transcript (R. 16). The transcript was filed with the court on June 30, 2022. (R. 18.)

**II.**

Having reviewed the transcript and all of the filings, I see no clear error in the magistrate judge's denial of MPC's unsealing motion.[1] First, MPC's grounds for unsealing appear to be

---

[1] MPC has not objected to the finding of mootness on its request for return of property. The fact that the seized property has been returned distinguishes In the Matter of the Search of Wag-Aero, Inc., 796 F. Supp. 394 (E.D. Wis. 1992), upon which MPC relies. See In re EyeCare Physicians of Am., 100 F.3d at 516.

6

weak.  To the extent MPC complains about the manner in which the warrant was executed, unsealing would do nothing to remedy those alleged abuses.  As the government notes, such violations are the proper subject of a motion to suppress in a later criminal case or possibly a suit under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  Nor does MPC explain how a violation of DOJ policy on the wearing of body cameras supports unsealing of the warrant affidavit.  Cf. United States v. Griffin, No. 18-cr-100-pp, 2018 U.S. Dist. LEXIS 175167, at *12 (E.D. Wis. Oct. 11, 2018) (holding that violation of a body camera policy does not, without more, justify suppression).  To the extent MPC argues unsealing is necessary so it can avoid further alleged clean water violations, it offers no reply to the government's contention that MPC is not supposed to be discharging any industrial wastewater.  Nor does MPC explain why it cannot reconcile its processes based on the regulations cited by the government.

Second, the government has a strong interest in maintaining the secrecy of its ongoing investigation, which appears to be in the grand jury phase.  See In re EyeCare Physicians of Am., 100 F.3d at 518 (discussing the need for secrecy of grand jury proceedings).  Disclosure at this point could reveal the government's methods of gathering evidence, the parameters of the investigation, and the nature of the evidence gathered thus far; it could also compromise or influence the cooperation of present and potential witnesses.  See id.  As in In re EyeCare Physicians of Am., "disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove or withhold records" (to the extent not already seized).  Id. at 519.

**III.**

**THEREFORE, IT IS ORDERED** that MPC's objections are overruled.

Dated at Milwaukee, Wisconsin, this 1st day of July, 2022.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge